```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
NICOLE SILVA,                           :
                                        :           PRO SE
                  Petitioner,           :
                                        :  03 CV 5748 (BSJ)(THK)
                                        :
         -against-                      :
                                        :  REPORT AND RECOMMENDATION
STATE OF NEW YORK,                      :
                                        :
                  Respondent.           :
----------------------------------------X
```
**TO: HON. BARBARA S. JONES, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York.

Petitioner Nicole Silva ("Petitioner") was convicted after a jury trial in New York Supreme Court, New York County, of Robbery in the First Degree (N.Y. Penal Law § 160.15(3)), and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)). She was sentenced as a predicate felony offender to a determinate term of eight years' imprisonment.

Petitioner, presently incarcerated at the Albion Correctional Facility, seeks habeas relief under 28 U.S.C. § 2254, claiming that the evidence against her at trial was insufficient as a matter of law, or alternatively, that her conviction was against the weight of the evidence. Respondent argues that Petitioner's sufficiency of the evidence claim is meritless, and that her weight of the

1

evidence claim is not cognizable on habeas review. This Court agrees and recommends that this action be dismissed with prejudice.

**BACKGROUND**

I. Facts

Petitioner was charged with two counts of Robbery in the First Degree and one count of Criminal Possession of a Weapon in the Fourth Degree in connection with the December 26, 1998, knife-point robbery of Joshua Hordish ("Hordish"). One of the robbery counts was dismissed before trial. At trial, the State proffered no physical evidence connecting Petitioner with the robbery. Its case in chief consisted of the testimony of four witnesses.

Hordish testified that on the night of December 25, 1998, he was working as a bartender at McSwiggan's Tavern in Manhattan. (See Trial Transcript, dated May 9, 2000 ("Tr."), at 111.) His shift that evening was from 7:00 p.m. to 4:00 a.m. (See id. at 112.) Hordish did not consume alcohol during his shift, but may have had one beer at the bar after his shift was over. (See id. at 131.)

After leaving McSwiggan's Tavern, Hordish went to a bar named Plug Uglies with a small group of friends. (See id. at 112.) Petitioner approached Hordish while he was sitting at the bar. (See id. at 113.) Petitioner told Hordish she was a business woman from Miami, and she conversed with Hordish for approximately forty-five minutes. (See id. at 116.) Hordish testified that Petitioner was wearing a red business suit with black trim and that he noticed a

2

large crack in one of her front teeth. (See id. at 119, 127.) He described the lighting in the bar as dim but sufficient for reading, and admitted that he consumed "three or four beers" while at Plug Uglies. (Id. at 134.)

At approximately 8:00 a.m., Petitioner approached Hordish for a second time and asked him to accompany her to her vehicle. (See id. at 119.) Hordish consented, exited the bar with Petitioner, and opened the door to her car. (See id. at 120-21.) Petitioner then held a three to four inch knife against Hordish's abdomen and demanded his money. (See id. at 122.) Petitioner removed nine hundred dollars from Hordish's pants pocket and immediately drove away. (See id. at 123.) Hordish testified that he believed Petitioner's vehicle was a blue Chevrolet. (See id. at 138.) After the robbery, he went to the local police station to report the incident. (See id. at 123.)

On October 30, 1999, Hordish received a phone call from an acquaintance who saw Petitioner at Plug Uglies, and believed she was the woman who had robbed Hordish ten months earlier. (See id. at 125.) Hordish immediately went to the bar, observed Petitioner, and determined that she was in fact the woman who had robbed him. (See id. at 126.) Hordish testified that he recognized Petitioner's face immediately, and also observed the crack in her front tooth. (See id. at 127.) In addition, Hordish overheard Petitioner describe herself to a bar patron as a "business lady"

from Miami. (See id. at 127.)

After making eye contact with Hordish, Petitioner's facial expression changed and she immediately walked into the restroom. (See id.) Hordish confronted Petitioner after she exited the restroom and asked if she remembered him. (See id. at 129.) According to Hordish, Petitioner responded, "I have never seen you before in my entire life." (Id.) Hordish then blocked Petitioner's attempted exit from the bar, at which point she began to scream. (See id.) The police arrived shortly thereafter, questioned Hordish, and placed Petitioner under arrest. (See id. at 148.)

Michael Stapleton ("Stapleton") and Phillip Staiana ("Staiana") also testified at trial. Staiana, a bartender at Plug Uglies and an acquaintance of Hordish, testified that he observed a conversation between Hordish and Petitioner on a date around Christmas of 1998. (See id. at 59). He described Petitioner as "dark skinned" and "Spanish," approximated her height at sixty-four inches and weight at 180 pounds, and stated she was wearing a red dress on the night in question. (See id. at 84, 101-02.) Stapleton, a co-owner of Plug Uglies and another acquaintance of Hordish, also testified that he had observed the conversation and described the "red dress" worn by Petitioner. (Id. at 51.) While both men observed Hordish leave the bar with Petitioner, neither observed the robbery. (See id. at 54, 87-88.) Further, both witnesses testified that they saw Petitioner at Plug Uglies a

4

second time on October 30, 1999, and Stapleton testified that he telephoned Hordish to inform him of Petitioner's presence at the bar. (See id. at 58, 82-83.)

Stapleton and Staiana both acknowledged that the lighting in the bar was dim, but sufficient on both evenings to allow them to recognize and observe the bar's patrons. (See id. at 51, 85-86.) Both witnesses also conceded that they each consumed between three to six beers on the night of the robbery. (See id. at 63, 105.)

Officer Carmelo Gonzalez ("Gonzalez"), who arrested Petitioner on the night of October 30, also testified at trial. Officer Gonzalez testified that while in police custody, Petitioner stated that she was innocent because "she was not in New York during last December." (Id. at 151.) He also testified that Petitioner said that the police were looking for a black woman and she was "Polynesian or Hawaiian." (Id.) According to Gonzalez, these statements were made before any information was provided to Petitioner regarding the facts of the initial robbery. (See id.) Officer Gonzalez conceded that a police investigation revealed that Petitioner never owned a blue Chevrolet. (See id. at 158.)

The jury returned a verdict finding Petitioner guilty on both charges. (See id. at 229-30.) The trial court subsequently sentenced Petitioner, as a second felony offender, to the minimum mandatory sentence of eight years' imprisonment on the robbery count, and time served on the weapons charge.

5

II. Post-Trial Proceedings

Petitioner, represented by counsel, filed an appeal with the Appellate Division, First Department, claiming that the evidence at trial was insufficient as a matter of law to support her conviction, or alternatively, that her conviction was against the weight of the evidence. See generally Brief of Petitioner-Appellant, attached as Ex. A to Declaration in Opposition to Petition for a Writ of Habeas Corpus ("Pet'r App. Br."). On May 23, 2002, the Appellate Division unanimously affirmed Petitioner's conviction. See People v. Silva, 294 A.D.2d 246, 742 N.Y.S.2d 536 (1st Dep't). On November 7, 2002, the New York State Court of Appeals denied Petitioner's application for leave to appeal. See People v. Silva, 99 N.Y.2d 539, 752 N.Y.S. 600 (2002).

Petitioner subsequently filed the instant action, raising the same claims she raised on direct appeal.

**DISCUSSION**

I. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); see also Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," restricts the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the contested state-court decision. Williams, 529 U.S. at 412, 120 S. Ct. at 1523; accord Leslie, 230 F.3d at 32.

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but rather whether it was "objectively unreasonable." See id. at 408-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal

7

habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable.").

Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091, 124 S. Ct. 962 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II. Weight of Evidence Claim

Petitioner claims that her conviction was not supported by the weight of the evidence presented at trial, and that consequently federal habeas relief is warranted.

Federal courts may only consider habeas petitions based on federal law or the United States Constitution. See 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a

writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The weight of the evidence argument offered by Petitioner is grounded exclusively in state law. (See Pet'r App. Br. at 13-14, citing N.Y. Crim. Pro. Law § 470.15(5).) In addition, unlike a sufficiency of the evidence claim, a weight of the evidence claim is entirely fact-based. Compare N.Y. Crim. Proc. Law § 470.15(5) ("The kinds of determinations of reversal or modification deemed to be on the facts include . . . a determination that a verdict of conviction resulting in a judgment was . . . against the weight of the evidence."), with id. § 470.15(4) ("The kinds of determinations of reversal or modification deemed to be upon the law include . . . [t]hat evidence adduced at a trial resulting in a judgment was not legally sufficient to establish the defendant's guilt of an offense of which he was convicted . . . ."). Petitioner's weight of the evidence claim is therefore not cognizable in a federal habeas proceeding, and should be dismissed. See Maldonado v. Scully, 86 F.3d 32, 35 (2d. Cir 1996) ("[A]ssessments of the weight

of the evidence . . . are for the jury and not grounds for reversal on appeal . . . ."); Mayo v. Burge, No. 02 Civ. 10191 (NRB), 2003 WL 21767767 at *3 (S.D.N.Y. July 30, 2003) (weight of the evidence claim not cognizable on federal habeas review); Rodriguez v. O'Keefe, No. 96 Civ. 2094 (LLS), 1996 WL 428164, at *4 (S.D.N.Y. July 31, 1996) (same).

III. <u>Sufficiency of the Evidence Claims</u>

This Court must construe the petition of a <u>pro se</u> litigant liberally. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). It therefore will consider Petitioner's contentions supporting her weight of the evidence argument in the context of her insufficiency of the evidence claim, which is cognizable on federal habeas review. See Mayo, 2003 WL 21767767, at *3; Venegas v. Artuz, No. 99 Civ. 722 (SAS), 1999 WL 804126, at *2 (S.D.N.Y. Oct. 8, 1999); cf. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763 (1987) (finding that unlike a "weight of the evidence" claim, which is based on a court's factual review power, a "sufficiency of the evidence" claim is based on the law).

A "sufficiency of the evidence" claim is based on federal due process principles. See Jackson v. Virginia, 443 U.S. 307, 317-19, 99 S. Ct. 2781, 2788-89 (1979) (the Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt). It is well-established "that in challenging the sufficiency of the evidence to support [a] conviction, a defendant

10

bears a heavy burden." United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998) (quoting United States v. Giraldo, 80 F.3d 667, 673 (2d Cir. 1996)); accord Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993). To overturn a conviction based on insufficiency of the evidence, a petitioner must establish that, viewing "the evidence in the light most favorable to the State . . . no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002); accord Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; see also Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) ("[T]he government receives the benefit of having all permissible inferences drawn in its favor.") (citations omitted).

AEDPA precludes a court from granting a petition for a writ of habeas corpus on the grounds of insufficiency of the evidence unless the state court unreasonably applied the principles underlying the Jackson standard when reviewing a petitioner's claim. See 28 U.S.C. § 2254(d)(1); Davis v. Miller, No. 99 Civ. 2423 (RWS), 1999 WL 1125055, at *3 (S.D.N.Y. Dec. 8, 1999); Redd v.

11

Quinones, No. 98 Civ. 2604 (LBS), 1998 WL 702334, at **4-5 (S.D.N.Y. Oct. 7, 1998); Fernandez v. Dufrain, 11 F. Supp. 2d 407, 418 (S.D.N.Y. 1998); Mobley v. Stinson, No. 94 Civ. 5911 (HB), 1997 WL 80587, at *2 (S.D.N.Y. Feb. 26, 1997).

Under New York law, robbery is defined as the "forcible stealing" of another's property where the defendant "uses or threatens the immediate use of physical force upon another person," either to physically acquire the property or to compel the owner to "deliver up the property." N.Y. Penal Law § 160.00 (McKinney 1999). A defendant is guilty of Robbery in the First Degree if, "in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime ... uses or threatens the immediate use of a dangerous instrument." N.Y. Penal Law § 160.15(3) (McKinney 1999). Further, a defendant is guilty of Criminal Possession of a Weapon in the Fourth Degree if he or she "possess any dagger, dangerous knife . . . or any other dangerous or deadly instrument with intent to use the same unlawfully against another." N.Y. Penal law § 265.01(2) (McKinney 1999).

Petitioner has proffered several arguments in support of her claim that there was insufficient evidence adduced at trial to satisfy the requisite elements of the charged offenses. She directs this Court's attention to inconsistencies in witness testimony regarding the physical characteristics of the woman with

whom Hordish conversed on the night of the robbery. (See Petition ("Pet.") at 5.) Specifically, Petitioner notes that Hordish testified that he believed his assailant was approximately 5'8", 140 pounds, and African-American. (See Pet'r App. Br. at 15, citing Tr. at 133.) Petitioner contrasts this description with Staiana's trial testimony describing a Spanish woman who he believed was 5'5" and 180 pounds. (See Pet'r App. Br. at 15, citing Tr. at 102-103.) Petitioner further contrasts these descriptions with the online booking sheet completed by Officer Gonzalez in which he describes Petitioner as 5'4", 140 pounds, and Caucasian. (See Pet'r App. Br. at 15, citing Tr. at 153-154.)

Petitioner also notes that Staiana and Stapleton were not eyewitnesses to the robbery. (See Pet. at 5.) She observes that no physical evidence was introduced by the State, nor was any evidence presented proving or demonstrating that the police had searched for the robber or the described vehicle immediately following the robbery.[1] Further, Petitioner contends that Hordish's testimony is not credible since he was under the influence of alcohol on the

---

[1] Petitioner also contends in her Response to Respondent's Memorandum of Law ("Pet'r Resp.") that the statements she made while in police custody were "falsified" by the District Attorney and therefore incorrectly admitted at trial. (See Pet'r. Resp. at 2). Further, Petitioner criticizes advice provided by her trial attorney which recommended that she not testify. (Id.) These issues have clearly not been exhausted in the state courts, and are not even raised as claims in the Petition. Moreover, they do not address the adequacy of the evidence that was introduced at trial.

13

night in question. (See id.)  Petitioner argues that viewed collectively, these deficiencies in the State's case establish that sufficient evidence was not presented to sustain her conviction.

The arguments Petitioner has advanced do not satisfy the stringent requirements for habeas relief.  In this Circuit, even "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) (quoting United States v. Danzey, 594 F.2d 905, 916 (2d Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179 (1979)); see also Tibbs v. Florida, 457 U.S. 31, 45 n.21, 102 S. Ct. 2211, 2220 (1982) (noting that due process requirements of Jackson are clearly met where the prosecution presented eyewitness testimony about the crime).  Hordish, an eyewitness to his own robbery, identified Petitioner at trial and testified that she was the woman who robbed him on the morning of December 26.  In the absence of any other evidence, Hordish's testimony, if believed, would have been sufficient to satisfy the requisite elements of the offenses with which Petitioner was charged.  A reasonable juror could have found Hordish's testimony credible, as he spent nearly an hour conversing with Petitioner on the night of the robbery and had ample time to observe her face, including a distinctive crack in her front tooth.  Accordingly, the fact that the State did not introduce any physical evidence at trial is of no moment.

Moreover, it is apparent that Petitioner seeks to have this

Court substitute its own assessment of the credibility of the witnesses who testified at trial for that of the jury. However, the Court cannot properly do so. See United States v. Shulman, 624 F.2d 384, 388 (2d Cir. 1980) ("Under our system of jurisprudence . . . normally the resolution of issues of credibility is exclusively the province of the jury."); Rosa v. Herbert, 277 F. Supp. 2d 342, 347 (Aug. 14, S.D.N.Y. 2003) ("In assessing [a] petitioner's claim, the court must defer to the jury's assessments of . . . the credibility of witnesses.") (citing Maldonado, 86 F.3d at 35); accord Lee v. Senkowski, No. 02 Civ. 3334 (BSJ)(JCF), 2003 WL 22890405 at *7 (S.D.N.Y. Dec. 2, 2003) (Report and Recommendation, adopted on Apr. 29, 2004) ("Insofar as identification evidence is concerned, it is well within the province of the jury to determine the reliability of a witness' memory and observational powers."). Thus, the fact that Stapelton, Staiana, and Hordish all admitted to having consumed alcohol on the night of the robbery, and provided inconsistent physical descriptions of Petitioner, does not provide grounds upon which habeas relief may be granted. These facts were simply relevant to the credibility of the witnesses, and were for the jury to weigh and resolve.

Petitioner's claim that Staiana and Stapelton did not observe the robbery fares no better. Both witnesses testified that they observed Petitioner with Hordish in the bar and observed the two leaving the bar together. They also both identified Petitioner at

15

trial.  Although Staiana and Stapelton did not observe the actual robbery, their testimony merely buttressed Hordish's testimony with respect to Petitioner's identity.  As such, the fact that they were not eyewitnesses to the robbery in no way undermines the legal sufficiency of the evidence.

In affirming Petitioner's conviction, the Appellate Division noted that the victim's identification of Petitioner was reliable and corroborated by the testimony of two witnesses.  See Silva, 294 A.D.2d at 246-247, 742 N.Y.S.2d at 536.[2]  The court further found that, "questions of identification and credibility were properly presented to the jury, and we see no basis to disrupt its findings." Id.

This Court is unable to conclude that the Appellate Division's determination was an objectively unreasonable application of the Jackson standard.  Accordingly, Petitioner's sufficiency of the evidence claim should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice.  Further, because Petitioner has not made a substantial showing of a denial of a federal right, this Court recommends that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c)(2); Lucidore v.

---

[2] The State also elicited testimony concerning Petitioner's incriminating statements on the night of her arrest.

16

N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000) This Court further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a), (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Jones. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2005
       New York, New York


Copies sent to:

Nichole Silva
00-G-0959
c/o Albion Correctional Facilty
3595 State School Road
Albion, New York 14411

Kimberly Morgan, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271